IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jason Ray Tyler,<br><br>                  Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et. al,<br><br>                Respondents. | No. CV 10-353-TUC-RCC (BPV)<br>(Lead)<br><br>No. CV 10-543-TUC-RCC (BPV)<br>(Consolidated)<br><br>**REPORT AND**<br>**RECOMMENDATION** |

On June 16, 2010, Petitioner filed a Petition under 28 U.S.C. § 2254 For A Writ Of Habeas Corpus By A Person In State Custody (Non-Death Penalty). (Doc. 1, in CV 10-353-TUC-RCC (BPV), lead case). On September 8, 2010, Petitioner filed a second Petition under 28 U.S.C. § 2254 For A Writ Of Habeas Corpus By A Person In State Custody (Non-Death Penalty). (Doc. 1, in CV 10-543-TUC-RCC (BPV), consolidated case). The two cases were consolidated on December 22, 2010 and thereafter, on December 27, 2010, Respondents filed one answer (Doc. 17) in the lead case with Exhibits A through JJ attached (Docs. 17-18). Petitioner filed a consolidated reply on January 26, 2011. (Doc. 19)

Pursuant to the Rules of Practice of this Court, these matters were referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation.

For the reasons discussed below, the Magistrate Judge recommends that the District Court enter an order DISMISSING the Petition.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.   FACTUAL AND PROCEDURAL BACKGROUND

### a.   <u>Trial Court Proceedings: 2005 cases</u>

#### i.   *Indictment*

Four indictments were filed by the grand jurors of Pima County in Arizona Superior Court, between March and November of 2005, charging Petitioner with four counts of drug related offenses, one count of fraudulent schemes and artifices, two counts of aggravated assault, one count of resisting arrest, and one count of possession of a deadly weapon by a prohibited possessor.[1]  (Answer, Ex. A-D)

#### ii.   *Plea agreement and sentencing*

On February 2, 2006, Petitioner signed a plea agreement, and entered a plea to possession and transportation of a dangerous drug for sale, prohibited possession of a deadly weapon, and an amended charge of facilitation to a fraudulent scheme and artifice, a class six felony.  (Answer, Ex. D, Reporter's Transcript (RT) 2/6/06; Ex. E) On March 6, 2006, Petitioner was sentenced for the charges above to concurrent prison terms of twenty, ten, three and one years, respectively.  (Answer, Ex. F)

### b.   <u>Trial Court Proceedings: 2006 case</u>

#### i.   *Indictment*

On April 17, 2006, an indictment was filed by the grand jurors of Pima County in Arizona Superior Court charging Petitioner with conspiracy to commit the offenses of fraudulent scheme and artifice, theft, taking the identify of another, trafficking in the identify of another, trafficking in stolen property, and forgery.[2] (Answer, Ex. T)  The indictment alleged that Petitioner was provided with identification and financial information which he used to create false identification such as driver's licenses and forged checks. (*Id.*) In addition to the conspiracy charge, Petitioner was also charged with

---

[1] The four state cases are captioned CR 20051017, CR 20051760, CR 20053687, and CR 20054669.  These cases will be referred to collectively in this Report and Recommendation as the "2005 cases."

[2] This state case is captioned CR 20061380, but will be referred to in this Report and Recommendation as the "2006 case."

twenty-two counts of forgery for forged checks.  (*Id.*)

       c.  <u>Motion to Dismiss</u>

Petitioner moved to dismiss the 2006 case, pursuant to the double jeopardy and due process clauses of both the State and Federal constitutions.  (Answer, Ex. EE)  Petitioner argued that the 2006 case involved the same subject matter as the 2005 case CR 20053687[3].  (*Id.*, p.2)  After the State apparently conditioned its offer of a plea agreement in the case on Petitioner's withdrawal of his motion to dismiss (Answer, Ex. Q, n. 1), Petitioner withdrew the motion to dismiss.  (Answer, Ex. FF.)

       d.  <u>Plea Agreement</u>

On February 23, 2007, Petitioner signed a plea agreement, and entered a plea in the 2006 case to the charge of conspiracy.  (Answer, Exs. U,V)  On June 27, 2007, the trial court sentenced Petitioner to the aggravated term of 12 years imprisonment, to be served concurrent to the sentences imposed for the 2005 cases.  (Answer, Ex. W)

       e.  <u>Petition for Post-conviction Relief: 2005 Cases</u>

Petitioner filed a petition for post-conviction relief in the 2005 cases on March 5, 2007. (Answer, Ex. G) The petition was based on three grounds: (1) The State breached a material term of the plea agreement; (2) Petitioner's counsel was ineffective at sentencing; and (3) Petitioner's counsel was ineffective during the course of the proceedings.  (*Id.*) Following an evidentiary hearing, (Answer, Exs. J, K), Superior Court Judge Nichols issued a ruling, denying post-conviction relief. (*Id.*, Ex. O) Judge Nichols found that the Petitioner had received assurances from the State that no other charges arising from the course of conduct which led to the cases in which the Petitioner was pleading would be filed against him, and that the State had breached this material term of the plea agreement by filing new charges arising from the same course of conduct to which the defendant had entered a plea of guilty. (Answer, Ex. O, at 2) Judge Nichols denied the petition, however, ruling that because Petitioner did not pursue his cause of

---

[3] This case was dismissed pursuant to the terms of the 2005 plea agreement.

action concerning the breach, choosing instead to accept a plea bargain to one of the counts in the 2006 case, Petitioner accepted and validated the 2006 case into the 2005 plea agreement. (Answer, Ex. O, at 3). Judge Nichols also found that Petitioner's plea agreement in the 2006 case waived any claim that the new case was a breach of a material term of his plea agreement in both the new case and the old case. (*Id.*)

### f.   Petition for Post-Conviction Relief: 2006 Case

Petitioner filed a petition for post-conviction relief in the 2006 case on May 28, 2008. (Answer, Ex. X) The petition was based on two grounds: (1) Petitioner was denied due process because the State violated a material term of the plea agreement in the 2005 cases; and (2) Petitioner's conviction was obtained in violation of the Double Jeopardy clause. (*Id.*) Superior Court Judge Warner concluded that the State did not breach the plea agreement in the 2005 cases by bringing the charges in the 2006 cases because "there are no promises or assurances in the written plea agreement nor were any promises made in open court on which the Petitioner relied in entering into the plea." (Answer, Ex. AA, at 8.) Judge Warner further concluded that even if there was a promise not to charge for other crimes arising out of the same conduct, the 2006 case did not breach that promise because the only conduct which overlapped between the 2005 cases and the 2006 case was one count which appeared to be identical but which was dismissed from the 2006 case. (*Id.*, at 9) Judge Warner further ruled that the charges in 2006 did not constitute double jeopardy, and even if Petitioner did have a valid double jeopardy claim, by pleading guilty, he waived that claim. (*Id.*, at 10-11)

### g.   Petitions for Review: 2005/2006 Cases

Petitioner filed a petition for review to the Arizona Court of Appeals from Judge Nichols' decision denying relief in the 2005 cases, raising two claims: (1) The trial court failed to follow the guidelines outlined in *Santobello v. New York*, 404 U.S. 257 (1971), regarding relief once a breach by the state has been established; and (2) Petitioner did not expressly waive his Double Jeopardy rights on the record or in the plea agreement, as required under *Carnley v. Cochran*, 369 U.S. 506 (1962). (Answer, Ex. P) Petitioner filed

a separate petition for review to the Arizona Court of Appeals from Judge Warner's decision denying relief in the 2006 case, raising two additional claims: (1) Without an evidentiary hearing the trial court denied his claim with respect to the requirements outlined in *Santobello*, once a breach by the state has been established; and (2) The Double Jeopardy Clause of the Constitution prevents the State from bringing the charges against him initially, citing *Blackledge v. Perry*, 417 U.S. 21 (1974). (Answer, Ex. BB)

The court of appeals consolidated the two "of-right" petitions for post-conviction relief (Answer, Ex. CC), and granted review but denied relief. (Answer, Ex. P) The appellate court did not find it necessary to decide whether the state's bringing the 2006 charges violated a term of the 2005 plea agreement because it agreed with both lower court judges' determination that Petitioner "waived both the first plea agreement's provisions and his double jeopardy rights." (*Id.* at 7, n.2)

Petitioner filed a consolidated petition for review to the Arizona Supreme Court raising three claims: (1) The court of appeals failed to consider whether or not the plea agreement in the 2005 cases applied to the protections outlined in *Blackledge*; (2) The court of appeals erred by ruling that Petitioner waived the breach under contract principles; and (3) The court of appeals erred in finding that facilitation and conspiracy are not the same offense for double jeopardy purposes. (Answer, Ex. R) The Arizona Supreme Court denied the petition for review on September 22, 2009. (Answer, Ex. S)

## II.  FEDERAL HABEAS PETITIONS

### a.  CV 10-353-TUC-RCC (BPV)

On June 16, 2010, Petitioner filed a petition for writ of habeas corpus in CV 10-353. (CV 10-353, Doc. 1) Petitioner raises two grounds for relief in the petition: (1) "Petitioner's due process rights were violated when the State breached the plea agreement entered into between the State and Petitioner"; and (2) "[B]ased on the plea agreement signed by the parties in [the 2005 cases] the State lacked the power to indict Petitioner and the very initiation of the proceedings against him in [the 2006 case] thus operated to deny him due process of law."

b.  CV 10-543-TUC-RCC (BPV)

On September 8, 2010, Petitioner filed a petition for writ of habeas corpus in CV 10-543. (CV 10-543, Doc. 1) Petitioner raises three grounds for relief in the petition[4]: (1) "Petitioner's Due Process rights were violated when the State indicted him in [the 2006 case] because the State did not have the power to hale him into court by indicting him in [the 2006 case] for the same subject matter and course of conduct as the 2005 cases"; (2) "[T]he conviction obtained by the [S]tate against Petitioner in [the 2006 case] is in violation of the Double Jeopardy Clause"; and (3) "[T]he state courts erred in finding that contract principles apply to Petitioner's circumstances."

The two cases were consolidated on December 22, 2010 and thereafter, on December 27, 2010, Respondents filed one answer (Doc. 17) in the lead case with Exhibits A through JJ attached (Docs. 17-18).  Petitioner filed a consolidated reply on January 26, 2011.  (Doc. 19)

III.  **DISCUSSION**

a.  Standard of Review

Because Petitioner filed his petition after April 24, 1996, this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254(d) ("AEDPA").

b.  Statute of Limitations

A one year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. 28 U.S.C. § 2244(d)(1).

c.  Exhaustion of State Remedies

Before a federal court may review a petitioner's claims on the merits, a petitioner must exhaust his state remedies, which means he must have presented in state court every claim raised in his federal habeas petition. 28 U.S.C. § 2254(b)(1); *O'Sullivan v.*

---

[4]  Because these three grounds were consolidated for a single report and recommendation, Grounds One, Two and Three of CV 10-543 will be referred to in this Report and Recommendation as Grounds Three, Four and Five.

*Boerckel*, 526 U.S. 838, 845 (1999) (a state prisoner in a federal habeas action must exhaust his federal claims in the state courts "by invoking one complete round of the State's established appellate review process" before he may submit those claims in a federal habeas petition).  Exhaustion occurs either when a claim has been fairly presented to the highest state court, *Picard v. Connor*, 404 U.S. 270, 275 (1971), or by establishing that a claim has been procedurally defaulted and that no state remedies remain available, *Reed v. Ross*, 468 U.S. 1, 11 (1984). Exhaustion of state remedies is required in order to give the state the "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted).

"To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32," *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994), and then present his claims to the Arizona Court of Appeals. *See Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999).

To meet the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court by describing the factual or legal bases for that claim and by alerting the state court "to the fact that the ... [petitioner is] asserting claims under the United States Constitution." *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995); *Baldwin*, 541 U.S. at 29; *see also Tamalini v. Stewart*, 249 F.3d 895, 898 (9th Cir. 2001). Mere similarity between a claim raised in state court and a claim in a federal habeas petition is insufficient. *Duncan*, 513 U.S. at 365-366. A petitioner must present both the operative facts and the federal legal theory on which the claim is based, *see Kelly v. Small*, 315 F.3d 1063, 1066 (9th Cir. 2003) (overruled on other grounds, *Robbins v. Carey*, 481 F.3d 1143 1149 (9th Cir. 2007)), "broad constitutional principles, such as due process, equal protection, and the right to a fair trial" in state court pleadings are not sufficient to establish that a federal constitutional claim was fairly presented to the state courts. *Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005)(internal citations omitted). A petitioner must make the federal basis of a claim explicit either by citing specific

provisions of federal law or case, *Lyons v. Crawford,* 232 F.3d 666, 670 (9th Cir. 2000) as amended by 247 F.3d 904 (9th Cir. 2001), or by citing state cases that plainly analyze the federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir.2003) (*en banc*).

### i.  Procedural Default

A habeas petitioner's claims may be precluded from federal review in either of two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). This situation is referred to as "procedural bar" or "procedural default." *See Coleman*, 501 U.S. at 732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). A claim is procedurally defaulted if the state court declined to address the issue on the merits for procedural reasons such as waiver or preclusion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802-805 (1991); *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). Second, the claim may be procedurally defaulted in federal court if the petitioner failed to present the claim in a necessary state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman,* 501 U.S. at 735 n.1; *Smith v. Baldwin*, 510 F.3d 1127, 1138 (9th Cir. 2007) (*en banc*) This is often referred to as "technical" exhaustion, because although the claim was not actually exhausted in state court, the petitioner no longer has an available state remedy.

### ii.  Cause and Prejudice/ Fundamental Miscarriage

If a claim is procedurally defaulted, it may not be considered by a federal court unless the petitioner demonstrates cause and prejudice to excuse the default in state court, or demonstrates that a fundamental miscarriage of justice would result. *Coleman,* 501 U.S. at 750; *Sawyer v. Whitley*, 505 U.S. 333, 338-339 (1992).

Cause is defined as a "legitimate excuse for the default," and prejudice is defined as "actual harm resulting from the alleged constitutional violation." *Thomas v. Lewis*,

945 F.2d 1119, 1123 (9th Cir. 1991); *see Murray v. Carrier*, 477 U.S. 478, 488 (1986) (a showing of cause requires a petitioner to show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule"). Prejudice need not be addressed if a petitioner fails to show cause. *Thomas*, 945 F.2d at 1123 n.10. To bring himself within the narrow class of cases that implicate a fundamental miscarriage of justice, a petitioner "must come forward with sufficient proof of his actual innocence," *Sistrunk v. Armenakis*, 292 F.3d 669, 672-73 (9th Cir. 2002) (internal quotation marks and citations omitted), which can be shown when "a petitioner 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 673 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

   d. <u>Standard of Review : Merits</u>

  Petitioner's habeas claims are governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA established a "substantially higher threshold for habeas relief" with the "acknowledged purpose of 'reduc[ing] delays in the execution of state and federal criminal sentences.'" *Schriro v. Landrigan*, 550 U.S. 465, 475 (2007) (quoting *Woodford v. Garceau*, 538 U.S. 202, 206 (2003)). The AEDPA's "'highly deferential standard for evaluating state-court rulings' ... demands that state-court decisions be given the benefit of the doubt ." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*) (quoting *Lindh*, 521 U.S. at 333 n. 7).

  Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrase "adjudicated on the merits" refers to a decision resolving a party's claim which is based on the substance of the claim rather than on a procedural or other non-substantive ground. *Lambert v. Blodgett*, 393 F.3d 943, 969 (9th Cir. 2004). The relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst,* 501 U.S. at 803-04); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold question under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir.2003). Habeas relief cannot be granted if the Supreme Court has not "broken sufficient legal ground" on a constitutional principle advanced by a petitioner, even if lower federal courts have decided the issue. *Williams*, 529 U.S. at 381; *see Musladin*, 549 U.S. at 76-77; *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004). Nevertheless, while only Supreme Court authority is binding, circuit court precedent may be "persuasive" in determining what law is clearly established and whether a state court applied that law unreasonably. *Clark*, 331 F.3d at 1069.

## IV.   ANALYSIS

### a. Timeliness

Respondents do not contest the timeliness of the habeas petition. Based on a review of the record, the Court finds that the petition is timely under 28 U.S.C. § 2244(d)(1)(A).

### b. Merits

#### i. *Ground One (CV 10-353): The State Breached Petitioner's Plea*

*Agreement*

Petitioner asserts that the State induced Petitioner to plead guilty by promising that no further charges would be brought against him regarding the subject matter contained in the plea agreement, yet, one month after being sentenced, the State brought identical charges against Petitioner. Consequently, Petitioner submits that the State breached the material term not to bring additional charges against Petitioner. Petitioner argues that when a prosecutor extends a promise to a defendant in order to induce the defendant to plead guilty, that prosecutor must satisfy that promise, and failure to do so violates constitutional due process. (CV 10-353, at 26)(citing *Santobello,* 404 U.S. at 261-62; *Mabry v. Johnson*, 467 U.S. 504, (1984); *State v. Georgeoff*, 163 Ariz. 434 (1990)).

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a federal court must deny a habeas petition where the state court has resolved the claim on the merits, unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A state court's decision is contrary to clearly established law when it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor,* 529 U.S. at 405-406.  A state court unreasonably applies clearly established law when it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003) (quoting *Williams,* 529 U.S. at 413).

Under the "unreasonable application" clause, the state court decision must be more than incorrect or erroneous.  *Andrade*, 538 U.S. at 75; *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010).  Rather, the state court's decision "must be objectively unreasonable," not just incorrect or erroneous. *Musladin,* 549 U.S. at 75-76.  Habeas relief is warranted for an unreasonable application of law, where the state court decision is "based on the application of a governing legal principle to a set of facts different from those of the case

in which the principle was announced," *Id.* at 76, *accord Panetti v. Quarterman*, 551 U.S. 930 (2007), <u>but only when the principle "clearly extend[s]" to the new set of facts</u>, *Wright v. Van Patten*, 552 U.S. 120, 125 (2008) (per curiam) (emphasis added).

Under either clause of 28 U.S.C. § 2254(d)(1), this Court must determine whether at the time the state court rendered its decision on the merits, there existed clearly established Federal law, as determined by the Supreme Court of the United States.  The Supreme Court has defined "clearly established Federal law" under § 2254(d)(1) to be "'the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'" *Musladin,* 549 U.S. at 74 (quoting *Williams,* 529 U.S. at 412).

A review of the Supreme Court's recent case law suggests that when a state court may have found a principled distinction between the case, *sub judice*, and Supreme Court case law, then the law is not clearly established for the state-court case.  *Murdoch v. Castro*, 609 F.3d 983, 991 (9th Cir. 2010). "[] Under the highly deferential standard established by AEDPA and the Supreme Court, as long as the state court could have found a principled reason not to apply the Court's precedents to the current case, [the federal courts] may not grant habeas relief."  *Murdoch*, 609 F.3d at 995. Against this highly deferential backdrop, the Court considers the Petition.

Petitioner raised his claim in his petition for post-conviction relief in the lower court. (Answer, Ex. G.) Judge Nichols held an evidentiary hearing on Petitioner's claim and made the following findings.

> The Court finds that the statements made by the prosecutor in the first change of plea hearing, as well as statements made by Mr. Cochran and the judge, which were acquiesced to by the prosecutor, and considering the context in which they were made, constituted an assurance to the defendant that no other charges arising from the course of conduct which led to the cases in which the defendant was pleading guilty would be filed against him. Further, the Court finds that the charges filed by the Attorney General did arise from the same course of conduct to which the defendant entered a plea of guilty in [the 2005 cases], involving the same, victims, time, co-defendants etc. The assurances sought by Mr. Cochran and given by Mr. Brandes were concerned with just this eventuality. The Court further finds

that even though the County Attorney's office was not involved in filing the new charges, their cases were filed on behalf of the State and thus could be affected by actions taken by another representative of the State. At the risk of stating the obvious, there is only one "State." Therefore, the Court finds that the defendant's claim of a breach of a material term of the plea agreement is well taken.

The defendant did not continue to pursue his cause of action concerning the breach, however. He chose instead to accept a plea bargain to one of the counts in the new case. A major term of this second plea agreement was that this sentence was to be concurrent with the sentences in the cases which the defendant now seeks to set aside. This, in the Court's view, incorporates the cases into the agreement and accepts and validates them. Moreover [,,,] the defendant agrees to give up any motions defenses or other matters he has asserted or could assert in this (the new) case. This language covers his assertion that the filing of this (the new) case was a breach of a material term of his previous case. Once that assertion is waived in the new case, it is waived in the previous cases as well.

(Answer, Ex. O, at 2-3)

Petitioner filed a petition for review to the Arizona Court of Appeals from Judge Nichols' decision denying relief in the 2005 cases, arguing that the trial court failed to follow the guidelines outlined in *Santobello* regarding relief once a breach by the state has been established. (Answer, Ex. BB) Petitioner argued that, pursuant to *Santobello*, "where the 'plea bargain' is not kept by the prosecutor, the sentence must be vacated and the state court will decide in light of the circumstances of each case whether due process requires (a) that there be specific performance of the plea bargain or (b) that the defendant be given the option to go to trial on the original charges." (Answer, Ex. BB, at 12)(citing *Santobello*, 404 U.S. at 267.)

The appellate court did not find it necessary to decide whether the State breached the plea agreement, because it found that Petitioner's case presented a "far different scenario" than *Santobello*. (Answer, Ex. Q, at 7) The court of appeals found that Petitioner, when responding to the 2006 charge, was aware of his rights under the plea agreement and had in fact filed a motion to dismiss the 2006 charge arguing the state had violated those rights. The court further found that his conduct in pleading guilty to the

- 13 -

2006 charge alleged despite the existence of the 2005 plea agreement that arguably could bar his being charged with that crime, was clearly inconsistent with an intent to enforce that agreement. Additionally, the court of appeals found that the 2006 plea agreement provided that Petitioner "gives up any motions, defenses or other matters which he[] has asserted or could assert in this case," which plainly encompassed any defense based on the 2005 plea agreement's terms. (*Id.*, at 8)

The court of appeals further held that Petitioner's reliance on *Carnley* to support his argument that his waiver of his rights under the 2005 plea agreement was insufficient was misplaced because *Carnley* was readily distinguishable. The court of appeals distinguished *Carnley* because in *Carnley*, the issue was waiver of the right to counsel, which raises special concerns that are not present when a defendant waives other constitutional, or contractual, rights. As the Court in *Carnley* observed, presuming a defendant has waived the right to counsel is improper, in part, because the defendant would "ha[ve] no way of protecting against [that presumption] except by requesting counsel" (Answer, Ex. Q, at 9)(citing *Carnley*, 369 U.S. at 514.) Additionally, the court of appeals observed that the record in the instant case, unlike *Carnley*, was not "silent" on the question of waiver; "not only did Tyler take affirmative steps wholly inconsistent with an intent to enforce any rights under the 2005 plea agreement, he expressly waived any such rights or defenses by entering into the 2006 plea agreement.

Here, Petitioner relies on *Santobello* to support his due process claims. However, as the court of appeals recognized, *Santobello* did not address the situation in which a defendant, aware of his rights, waives any objection to the state's breach of a plea agreement; thus, Petitioner has not identified any clearly established Supreme Court precedent supporting his claims. *See Murdoch v. Castro*, 609 F.3d 983, 991 (9th Cir.2010) (*en banc*) ("[W]hen a state court may draw a principled distinction between the case before it and Supreme Court caselaw, the law is not clearly established for the state-court case.").

In *Santobello*, the petitioner's "counsel immediately objected" to the prosecutor's sentencing recommendation "on the ground that the State had promised . . . that there

would be no sentence recommendation by the prosecution." *Id.* at 259. In contrast, in the 2006 proceedings, Petitioner had filed a motion to dismiss, specifically arguing that the prosecution was in direct violation of the plea agreement entered in the 2005 cases. (Ex. DD at 2) He later withdrew the motion to dismiss, however, and subsequently entered into a plea agreement with the State, wherein the parties stipulated that Petitioner would receive a sentence concurrent with those already being served in the 2005 cases. (Ex. EE; Ex. U, at 3) As part of the plea negotiations in the 2006 case, Petitioner clearly bargained for a sentence concurrent with the 2005 cases, and the state court's ruling related to the contractual nature of the agreement, and the resultant waiver by Petitioner distinguishes this case from *Santobello*.

The Magistrate Judge finds that the court of appeals finding that Petitioner waived any claim that the state's bringing the 2006 charge violated a term of the 2005 plea agreement was not contrary to, or an unreasonable application of clearly established federal law, as determined by the Supreme Court precedent.

>    ii. *Ground Two (CV 10-353): The State Lacked the Power to Indict Petitioner*[5]

Petitioner asserts that the plea agreement in the 2005 case shielded Petitioner from any further prosecution for the same subject matter as that plea agreement. (CV 10-353, Doc. 1, at 30-31) Petitioner argues that "[t]he manner in which the State courts applied *Blackledge v. Perry*, 417 U.S. 21 (1974) and *Menna v. New York*, 423 U.S. 61 (1975) to the facts in Petitioner's case was patently unreasonable, and that the State courts'

---

[5] Petitioner refers throughout his Petition to the state's "power to indict" or the "power to hale" Petitioner into court. Petitioner argues, alternatively, that the state lacked the power to bring the 2006 charges against Petitioner based on both a due process argument, arising from the terms of his 2005 plea agreement, and based on a double jeopardy argument. Because either of these arguments could imply a "power to indict" or the "power to hale" a defendant into court, it is not always entirely apparent from a quick reading of the parties briefing or the appellate court ruling what is at issue in each claim or how the state courts ultimately disposed of each claim. To further confuse matters, the appellate court found Petitioner waived both his due process (Answer, Ex. Q, ¶ 15) and double jeopardy rights (*id.*, ¶ 16), but also found it need not decide whether Petitioner's double jeopardy waiver was ineffective as argued by Petitioner because it found that the 2006 indictment did not violate double jeopardy (*id.*, ¶ 19). Accordingly, the Court will attempt to make each claim and the state court's ruling clear as to each case before proceeding to dissect each individual claim.

decision in Petitioner's case was 'contrary to … clearly established federal law', … when 'the state court applie[d] a rule that contradict[ed] the governing law set forth' in *Santobello*, *Blackledge* and *Menna*. The State courts 'confront[ed] facts that are materially indistinguishable from [*Santobello*, *Blackledge* and *Menna*' and arrive[d] at a result opposite' to the holdings. *Williams*, 529 U.S. at 412-413 (Justice O'Connor)." (CV 10-353, Doc. 1, at 34)

Petitioner relies on *Blackledge* and *Menna*, *supra*, for support for his argument that the State "did not have the power to bring the charges against him in the 2006 case in any event." (CV 10-353, Doc. 1, at 31) To be clear, because *Menna* involved a double jeopardy claim, a reading of Petitioner's arguments in Ground Two make clear that he is making a claim only that the State did not have the power to bring the charges against him in the 2006 case because to do so would be a due process violation based on the plea agreement reached in the 2005 cases, not a double jeopardy violation. (CV 10-353, Doc. 1, at 31-33)

Respondents allege that this claim is procedurally defaulted because Petitioner did not properly exhaust this claim in the state courts. (Doc. 17, at 20) Respondents seem to concede, however, that Petitioner raised this claim in his petition for review to the court of appeals, and Petitioner makes this same assertion; that this argument was a response to both Judge Warner's and Judge Nichols' rulings on the issue of waiver under *Blackledge*. The problem with this argument, however, is that a *Blackledge*/*Menna* issue was raised, not in the 2005 petition for review (See Answer, Ex. P), but in the 2006 petition for review, and not as an as an error in the trial court's ruling of waiver of the due process violation, but as an error in the trial court's ruling of waiver of the double jeopardy violation. (Answer, Exs. BB, at 13-14) Despite their similarities, these are not the same issues. As Petitioner noted in his petition for review to the Supreme Court, the court of appeals did not discuss or decide whether or not the plea agreement in the 2005 case, and Petitioner's due process rights stemming from that plea agreement, were protected by *Blackledge*. (Answer, Ex. R, at 6) The most likely reason the court of appeals did not discuss or decide the issue is that, although the Petitioner raised this issue before the

Arizona Supreme Court, he had not raised it before the Arizona Court of Appeals. To provide the state with the necessary "opportunity," a petitioner "must 'fairly present' his claim in each appropriate state court ... thereby alerting that court to the federal nature of the claim." *Baldwin,* 541 U.S. at 29. Because Petitioner raised his claim for the first time in a discretionary petition for review to the state's highest court, Petitioner has failed to exhaust this claim. *See Casey*, 386 F.3d at 918 (because petitioner "raised his federal constitutional claims for the first and only time to the state's highest court on discretionary review, he did not fairly present them"). Petitioner has failed to establish cause for failing to raise the claim in the court of appeals in the first instance. Petitioner's argument that he could not have raised this claim until Judges Nichols and Warner first raised the issue of waiver in their rulings to deny relief might have been grounds to establish cause if Petitioner had raised a *Blackledge* claim, as it applied to Petitioner's due process claim, in either of his petitions for review to the appellate court.

The Magistrate Judge concludes that Petitioner failed to properly exhaust Ground Two in the state courts. The Magistrate Judge further concludes that if Petitioner returned to state court and attempted to litigate Ground One, it would be found waived and untimely under Rules 32.2(a)(3) and 32.4(a) of the Arizona Rules of Criminal Procedure because it does not fall within an exception to preclusion. See Ariz. R.Crim. P. 32.2(b); 32.1(d)-(h). Therefore, Ground One is "technically" exhausted but procedurally defaulted because Petitioner no longer has an available state remedy. *See Coleman*, 501 U.S. at 732, 735 n. 1; *Smith,* 510 F.3d at 1138. Petitioner's right to direct review having been completed, he would have to present this claim to the state courts in a petition for post-conviction relief in order to exhaust the claim. Under Arizona law, notice of post-conviction relief must be filed within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the final order or mandate by the appellate court in the petitioner's first petition for post-conviction relief proceeding. Rule 32.4(a), Ariz.R.Crim.P. If Petitioner were to present this issue in another petition for post-conviction relief, such presentation would be untimely, Rules 32.1 and 32.4(a), and precluded, Rule 32.2. Such a new petition, therefore, would be subject to summary

dismissal. *State v. Rosario*, 195 Ariz. 264, 266 (App.1999); *State v. Jones*, 182 Ariz. 432 (App.1995); *Moreno v. Gonzales*, 192 Ariz. 131, 135 (1998) (timeliness is a separate inquiry from preclusion). These claims, therefore, are procedurally defaulted. *Park v. California*, 202 F.3d 1146, 1150-51 (9th Cir.2000) (federal habeas review is precluded where prisoner has not raised his claim in the state courts and the time for doing so has expired).

Petitioner "can no longer raise[his claim] through any state procedure, state remedies are no longer available, and are thus exhausted" by virtue of a procedural bar. *Franklin*, 290 F.3d at 1231. If raised by the State, such a procedural bar provides an independent and adequate state ground for denying the claim in federal court, absent a showing of cause and prejudice or a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Because Petitioner presents no cause for the default nor has he demonstrated that a fundamental miscarriage of justice would occur if federal review of this claim is barred, the Magistrate Judge recommends that the District Court, after its independent review, dismiss this claim.

Alternatively, the Magistrate Judge finds that *Blackledge* does not preclude a finding of waiver of Petitioner's due process claim. Petitioner argues that he does not waive a Constitutional violation as the one in his case merely by entering into a plea agreement. (Doc. 19, at 8)(citing *Blackledge*, 417 U.S. 21 (1974)). In *Blackledge*, the Supreme Court held that a plea of guilty did not foreclose a subsequent challenge because in *Blackledge*, unlike the Court's decisions in *Brady v. United States*, 397 U.S. 742 (1970) and *Tollett v Henderson*, 411 U.S. 258 (1973), the defendant's right was "the right not to be haled into court at all upon the felony charge. The very initiation of proceedings against him ... thus operated to deny him due process of law." *Blackledge*, 417 U.S., at 30-31. "Where the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty." *Menna*, 423 U.S. at 62(citing *Blackledge*, 417 U.S. at 30). The Supreme Court has explained, however, that counseled guilty pleas neither inevitably "waive" all antecedent

- 18 -

constitutional violations, nor do they hold that all constitutional violations such as double jeopardy claims may never be waived. *Menna*, 423 U.S. at 63, n.2. The Supreme Court "simply hold[s] that a plea of guilty to a charge does not waive a claim that judged on its face the charge is one which the State may not constitutionally prosecute." *Id.*

In *United States v. Broce*, 488 U.S. 563 (1989), the Supreme Court considered the exceptions to the rule barring collateral attack on a guilty plea established by *Blackledge* and *Menna*. *Id.* at 574. The Court observed that "[b]oth *Blackledge* and *Menna* could be (and ultimately were) resolved without any need to venture beyond that record. In *Blackledge*, the concessions implicit in the defendant's guilty plea were simply irrelevant, because the constitutional infirmity in the proceedings lay in the State's power to bring any indictment at all. In *Menna*, the indictment was facially duplicative of the earlier offense of which the defendant had been convicted and sentenced so that the admissions made by Menna's guilty plea could not conceivably be construed to extend beyond a redundant confession to the earlier offense." 488 U.S. at 575-76.

Unlike the claims at issue in *Menna* (double jeopardy) and *Blackledge* (vindictive prosecution), a breach of a plea agreement does not reach the power of the state to bring an indictment in the first instance. The language in *Mabry,* relied upon by Petitioner "when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand" 467 U.S. at 509, has been recognized as dictum by the Supreme Court and only as "sometimes true." *Puckett v. United States*, 556 U.S. 129, 138, n.1 (2009).

Petitioner argues that the State courts have formulated an "outcome determinative test" *sua sponte*, which was not contained in the holdings or dicta of any of the United States Supreme Court cases cited by Petitioner. Petitioner argued that the State court looked to future conduct of Petitioner, in a totally separate case than the 2005 case, to determine if Petitioner cured the State's breach of the plea agreement, and to do so was objectively unreasonable. (CV 10-353, Doc. 1, at 35) The Supreme Court, however, has specifically contemplated that a defendant may waive objections to a claim of breach of a plea agreement absent a contemporaneous objection, *see Puckett*, 556 U.S. at 140, except

in instances where the State may not constitutionally prosecute, such as an indictment which is facially duplicative of the earlier offense (*Menna*) or where the guilty plea is irrelevant because the indictment itself was constitutionally infirm (*Blackledge*), see *Broce*, 488 U.S. at 575-76. This case is distinguishable from both *Menna* and *Blackledge*, because the lower court must look beyond the face of the indictment to determine if the new charges were a violation of the 2005 plea agreement, and, even if they were, this would not render the 2006 indictment "constitutionally infirm.." Because the Petitioner withdrew his motion to dismiss at the time the alleged breach occurred, and entered a plea of guilty, waiving all objections and defenses, Petitioner waived any claim that the 2006 charges were a breach of the terms of the 2005 plea agreement.

The Magistrate Judge finds that *Blackledge* does not preclude a finding of waiver of Petitioner's due process claim.

iii.   *Ground Three (CV 10-543): The State Lacked the Power to Hale Petitioner Into Court in the 2006 Case*

Petitioner argues that the indictment in the 2006 case was barred by Section K in the plea agreement in the 2005 case; the State did not have the power to indict Petitioner in the 2006 case. Petitioner further argues that the manner in which the State courts applied *Santobello*, *Blackledge* and *Menna* to the facts in Petitioner's case was patently unreasonable. Petitioner asserts that the State courts have formulated and imposed an "outcome determinative test" *sua sponte*, which was not contained in the holdings or dicta of any of the United States Supreme Court cases cited by Petitioner. Petitioner argues that the State courts looked to future conduct of Petitioner, in a totally separate case than the 2005 case, to determine if Petitioner cured the State's breach of the plea agreement, and to do so was objectively unreasonable. (CV 10-543, Doc. 1, at 31)

This claim is factually and legally identical to Ground Two, raised in Petitioner's first Petition. Ordinarily, a petitioner cannot be granted federal habeas relief unless "the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "A petitioner has satisfied the exhaustion requirement if: (1) he has 'fairly presented' his federal claim to the highest state court with jurisdiction to consider it, or

(2) he demonstrates that no state remedy remains available." *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir.1996) (quotations and citations omitted). As stated above, Tyler did not exhaust this claim in a procedurally appropriate manner. As discussed above, it appears that Petitioner "can no longer raise[his claim] through any state procedure, state remedies are no longer available, and are thus exhausted" by virtue of a procedural bar. *Franklin*, 290 F.3d at 1231. If raised by the State, such a procedural bar provides an independent and adequate state ground for denying the claim in federal court, absent a showing of cause and prejudice or a fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 488 (1986).

Here the state appears to have waived any claim of procedural default by failing to raise it. *See Vang v. Nevada*, 329 F.3d 1069, 1073 (9th Cir. 2003). Under these circumstances, the Court must consider whether to raise the procedural default *sua sponte*. *See Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998); *Boyd v. Thompson*, 147 F.3d 1125 (9th Cir. 1998). In *Windham*, the Ninth Circuit Court of Appeals applied the procedural bar even though the state failed to raise it. Based on principles of federalism and comity, the Circuit Court "decline[d] to permit a defendant, represented by counsel at trial, to fail to raise an issue before the trial judge, await the outcome of the jury's deliberations, and then seek federal habeas corpus relief, after the state's highest court has declined to reach the merits of his federal constitutional claim because it is procedurally barred by state law." *Id.* Nevertheless, because the petitioner in *Windham* did not have an opportunity to argue that he met the criteria for overcoming the state's procedural bar, the Ninth Circuit remanded the matter to the district court to give the petitioner "an opportunity to present a cause and prejudice justification for his procedural default." *Id.*

In this instance, however, because this claim is factually and legally identical to Ground Two, and Petitioner, through counsel, has had the opportunity to respond to the state's procedural default argument, the Magistrate Judge finds, for the same reasons stated in the Magistrate Judge's discussion of Ground Two, that Petitioner failed to properly exhaust Ground Two in the state courts, and the claim is now procedurally

defaulted. Because Petitioner presents no cause for the default nor has he demonstrated that a fundamental miscarriage of justice would occur if federal review of this claim is barred, the Magistrate Judge further recommends that the District Court, after its independent review, dismiss this claim.

Also for the same reasons discussed in the alternative ruling of Ground Two, the Magistrate Judge finds that *Blackledge* does not preclude a finding of waiver of Petitioner's due process claim.

> iv.  *Ground Four (CV 10-543): The Conviction Obtained by the State Against Petitioner in the 2006 Case is in Violation of the Double Jeopardy Clause*

Petitioner argues that it was unconstitutional for the State to obtain a conviction for Facilitation to Commit Fraudulent Scheme and Artifice in the 2005 case, and then a month later indict Petitioner for Conspiracy to commit that same fraudulent scheme, and, as such, the Conspiracy charge is in violation of the Double Jeopardy Clause. (CV 10-543, at 36)

Respondents assert that this claim is procedurally defaulted because the state superior courts found that Petitioner waived this claim by pleading guilty, in essence, applying a procedural bar to Petitioner's claim. (Answer, at 32-33) Respondents argue that this ruling rests on an independent and adequate state ground, and this Court is precluded from reviewing Petitioner's claims because he has failed to argue, much less prove, cause and prejudice or the existence of a fundamental miscarriage of justice in order to excuse the procedural default. Petitioner argues that the state courts did not use a procedural bar to dismiss Petitioner's notice of post-conviction relief, and Petitioner should not be charged with the responsibility of proving cause and prejudice in this case. Whether the state trial courts applied a procedural bar, as Respondent's argue, is irrelevant, however, because the court of appeals directly addressed the merits of Petitioner's double jeopardy claim and found that the indictment brought in the 2006 case did not violate double jeopardy. (See Answer, Ex. Q, at 11) Thus, this Court may address the merits of Petitioner's claim. *Ylst*, 501 U.S. at 801("State procedural bars are not

- 22 -

immortal, however; they may expire because of later actions by state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available.")(citing *Harris v. Reed*, 489 U.S. 255, 262 (1989)).

Petitioner pled guilty in the 2005 cases to the amended charge of facilitation to a fraudulent scheme and artifice. (Answer, Exs. D, E) The Amended Count Ten read that "On or about the month of August, 2005, JASON NMN TYLER facilitated pursuant to a scheme or artifice to defraud, obtained a benefit from BROWNIE TROOP #1187 and/or WELLS FARGO BANK, by means of false or fraudulent pretenses, representations, promises or material omissions…" In establishing the factual basis for that plea, Petitioner's counsel stated that Petitioner "would agree that on … [August, 2005] there were checks in existence that had his personal information on them that did not belong to him." (Answer, Ex. D, R/T 2/6/06, at 15) The Court asked if he wrote out the checks improperly, and Petitioner's counsel responded "He knew that there were checks out there, but he did not write them out." (*Id.*) The Court asked if somebody else wrote them out, if Petitioner facilitated, or helped other people to write them out as part of the scheme, and Petitioner's counsel agreed that was correct. (*Id.*, at 16)

The 2006 indictment charged Petitioner with conspiracy to commit the offense of fraudulent scheme and artifice, theft, taking the identity of another, trafficking in stolen property, and forgery. (Answer, Ex. T)

Petitioner claimed in his petition for post-conviction relief in the 2006 case that the 2006 conviction was obtained in violation of the Double Jeopardy clause. (Answer, Ex. X, at 4) Judge Warner ruled that the charges in 2006 did not constitute double jeopardy, and even if Petitioner did have a valid double jeopardy claim, by pleading guilty, he waived that claim. (Answer, Ex. AA, at 10-11) Judge Warner explained:

> In his affidavit, the Petitioner states that the victim in [the 2005 case] was the same. He is mistaken. Only one of the victims as to one check is the same. He stated the co-defendants were the same. Again, he is mistaken. Some of the co-defendants in both cases are the same. However, some of the co-defendants in the 2005 case were not charged in the 2006 case, and

1
2
3
4

> some of the co-defendants in the 2006 case were not charged in the 2005 case. Only one charge appears to be a duplicate. The duplicate charge is Count Nineteen in [the 2006 case] and Count Three in [the 2005 case]. While the Petitioner and Jacqueline Bee were charged with Forgery of check number 27340 in CR 27340 in [the 2006 case], only Jacqueline Bee was charged with forgery of the same check in [the 2005 case].

5
6
7
8
9
10
11

> As in *Blockburger*, in Petitioner's case, although the underlying basis for the charged conduct (i.e. forging checks and distributing them to others) was the same in the 2005 cases and in [the 2006 case], each individual act of forgery is a distinct offense. Forgery is a prohibited offense and Petitioner could be charged and punished separately for each and every check that he forged. Therefore, based on the test in *Blockburger*, the charged conduct in the 2005 cases and the charged conduct in [the 2006 cases] do not constitute the same course of action. Thus, Petitioner has not been subjected to double jeopardy and, therefore, the State has not violated Petitioner's federal or state constitutional rights.

12  (*Id.*, at 10-11)

13  Petitioner did not address this ruling in his petition for review, that the specific

14  duplicate charge regarding check number 27340 was the basis for his double jeopardy

15  claim, rather, Petitioner submitted to the court of appeals that his plea in the 2005 cases

16  was to Facilitation (A.R.S. § 13-1004), and he was then indicted in the 2006 case on

17  Conspiracy (A.R.S. § 13-1003), and that each of these crimes requires proof of the same

18  elements with respect to the *Blockburger* test and consequently the State did not possess

19  the power to bring the charges in the first place. (Answer, Ex. BB, at 15-17)

20  The court of appeals reviewed Judge Warner's decision *de novo*, and held that,

21  assuming, *arguendo*, that the conspiracy charge and facilitation conviction were based on

22  the same acts or transactions, there was no double jeopardy violation:

23
24
25
26
27
28

> [B]because the facilitation and conspiracy charges each have an element the other lacks. To be guilty of facilitation, a person must "act[ ] with knowledge that another person is committing or intends to commit an offense, [and] . . . knowingly provide[ ] the other person with means or opportunity for the commission of the offense." A.R.S. § 13–1004(A). Conspiracy requires proof that a person, "with the intent to promote or aid the commission of an offense," "agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the

offense." A.R.S. § 13–1003(A). Thus, conspiracy, unlike facilitation, requires proof of an agreement that the offense would be committed. And facilitation requires proof the defendant acted, that is, that he or she provided the "means or opportunity for the commission of the offense." § 13–1004(A). Conversely, beyond entering an agreement, conspiracy does not require any action by the defendant-only an overt act by any one of the conspirators. § 13– 1003(A). Thus, for double jeopardy purposes, facilitation and conspiracy are not the same offense even if based on the same underlying course of conduct. *See Blockburger*, 284 U.S. at 304.

(Answer, Ex. Q, ¶ 21)

Because the Arizona Supreme Court summarily affirmed the Arizona Court of Appeal's ruling, this court looks to the Arizona Court of Appeal's reasoning to determine whether the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. *See Ylst*, 501 U.S. at 803.

The Arizona Court of Appeals utilized the "same elements" test promulgated in *Blockburger* to resolve Petitioner's claim that the Fifth Amendment's Double Jeopardy Clause had been violated. (Exhibit Q, at 12–13.) "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not. . . . " *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Petitioner concedes this is the correct test to apply. (*See* CV 10-543, Doc. 1, at 35)

Applying the Supreme Court's analysis, the Ninth Circuit Court of Appeals has stated:

> Indeed, under the rules explicated by the Supreme Court, even when the same conduct forms the basis for two charges, the two charges do not necessarily entail the "same offense" for double jeopardy purposes. . . . What is determinative under the Court's double jeopardy doctrine is simply whether the statutes involved require satisfaction of the same statutory elements, or whether each statute requires proof of an element that the other does not.

*United States v. Arlt*, 252 F.3d 1032, 1039 (9th Cir. 2001) (citing *Dixon*, 509 U.S. at 703–

04).

The Arizona appellate court's adjudication of Petitioner's double jeopardy claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. The state court found that even if the conspiracy charge and facilitation conviction were based on the same acts or transactions, there is no double jeopardy violation because the facilitation and conspiracy charges *each have an element the other lacks*. To be guilty of facilitation, a person must "act [ ] with knowledge that another person is committing or intends to commit an offense, [and] . . . knowingly provide [ ] the other person with means or opportunity for the commission of the offense." A.R.S. § 13–1004(A). Conspiracy requires proof that a person, "with the intent to promote or aid the commission of an offense," "agrees with one or more persons that at least one of them or another person will engage in conduct constituting the offense and one of the parties commits an overt act in furtherance of the offense." A.R.S. § 13–1003(A). Thus, conspiracy, unlike facilitation, requires proof of an agreement that the offense would be committed. Facilitation requires proof the defendant acted, that is, that he or she provided the "means or opportunity for the commission of the offense." § 13–1004(A).  Under the "unreasonable application" clause, the state court decision must be more than incorrect or erroneous. *Andrade*, 538 U.S. at 75; *Renico,* 130 S.Ct. at 1862.  Rather, the state court's decision "must be objectively unreasonable," not just incorrect or erroneous. *Musladin*, 549 U.S. at 75-76.  The state court's application of the same elements test to the Arizona offenses of facilitation and conspiracy was not objectively unreasonable.

Petitioner also argued that, in addition to the "same elements" test, the Supreme Court has also stated that a court should consider whether or not there is "a substantial overlap in proof offered to establish the crimes." *Brown v. Ohio*, 431 U.S. 161, ¶ 33 (1977) *quoting Iannelli v. United States*, 420 U.S. 770, 785 n. 17 (1973). (Answer, Ex. BB, at 17) Petitioner asserted that in these two cases, there was a substantial overlap. (*Id.*) The court of appeals rejected this contention with little discussion:

Despite [Petitioner]'s assertion to the contrary, we do not consider whether there is "a substantial overlap in the proof offered to establish the crimes." [Petitioner] misquotes *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977), in which the Supreme Court stated the *Blockburger* test is satisfied if each crime requires proof of a fact the other does not, "'notwithstanding a substantial overlap in the proof offered to establish the crimes.'" *Id.* at 166, quoting *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975) (emphasis added). Prosecution for distinct crimes arising out of the same conduct does not violate double jeopardy. *See Hernandez v. Superior Court*, 179 Ariz. 515, 520, 880 P.2d 735, 740 (App. 1994).

There is no support in the clearly established federal law establishing a bar to prosecution when there is a "substantial overlap in proof offered to establish the crimes." *See United States v. Dixon*, 509 U.S. 688 (1993). As explained by the Supreme Court in *Dixon*, "[t]he holding of *Brown*, like that of [*In re*] *Nielsen*, [131 U.S. 172 (1889)], rests squarely upon the existence of a lesser included offense. *Id.* at 706 ("Quoting that suspect dictum multiple times … cannot convert it into case law."); *see also Andrade*, 538 U.S. at 71 (The Supreme Court has explained that clearly established Federal law "refers to the holdings, as opposed to the dicta, of this Court's decisions as of the time of the relevant state-court decision.")(quoting *Williams*, 529 U.S. at 412)

The state court's findings were consistent with the United States Supreme Court's holdings in *Blockburger* and *Dixon*, and were not an unreasonable application of or contrary to clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on the claim for relief set forth in Ground Four.

      *v.   Ground Five (CV 10-543): The State Court Incorrectly Held that Petitioner Waived his Constitutional Rights Under Contract Principles*

Petitioner asserts that the court of appeals acted unreasonably by applying contractual principles to find that Petitioner waived any right to enforce the terms of his plea agreement in the 2005 case by withdrawing his motion to dismiss the 2006 charge because contract principles do not provide sufficient analogy in this case based upon the reasoning in *Blackledge*. (CV 10-543, at 37-38) Alternatively, Petitioner argues that

contract principles warrant relief in this case.

Respondents argue that Petitioner did not present to any of the state courts the claim raised in Ground Five. (Doc. 17, at 33) Petitioner responds that he did raise this claim at the first opportunity he had to raise it, before the Arizona Supreme Court. (Doc. 19, at 13) Petitioner asserts that the issue of contract principles was not presented by Petitioner to the lower court or court of appeals because he was unaware that those courts would use that theory to deny him relief, but once the theory was raised by the court of appeals, Petitioner raised the issue with the Arizona Supreme Court in order to give the state courts a fair opportunity to review the federal issue. (*Id.*) Petitioner argues in this federal habeas that the Court of Appeals relied on state law to support the contention that Petitioner's plea agreements are controlled by contract principles, but that contract principles do not apply to Petitioner's case based upon the reasoning in *Blackledge*. (CV 10-543, Doc. 1, at 37) Petitioner is correct, that in ruling on Petitioner's Petition for post-conviction relief, Judge Warner did not state explicitly that she was applying contract principles to find Petitioner waived his double jeopardy rights.

The Magistrate Judge finds that, by raising the claim at his first opportunity, Petitioner did not procedurally default this claim.

Petitioner's claim is without merit, however. "Although the analogy may not hold in all respects, plea bargains are essentially contracts." *Puckett,* 556 U.S. at 137 (citing *Mabry*, 467 U.S. at 508). Petitioner argues that contract principles do not provide a sufficient analogy based upon the reasoning in *Blackledge* (that the State did not have the power to bring the case against Tyler) and that it is clear the parties did not have the power to enter into an agreement. Petitioner further argues that because the state lacked the authority to bring an indictment against Petitioner, it follows that they also did not possess the authority to enter into an agreement regarding that indictment, and therefore no contract could be enforced between the parties and contract principles do not apply.

For the reasons already elaborated upon in Ground Two, the Magistrate Judge finds that this case is distinguishable from *Blackledge, supra*, and the state did have both the authority to bring an indictment against Petitioner and to enter into an agreement

regarding the indictment, and thus the court of appeals ruling was not contrary to clearly established federal law. Accordingly, Petitioner is not entitled to habeas relief on the claim for relief set forth in Ground Five.

Petitioner argues in the alternative, that if the Court is inclined to impose contract principles upon this case, then there are three contract principles that warrant relief: 1) Bad faith actions by the state, 2) Restatement (Second) of Contracts dictates suspension of performance by Petitioner, and 3) any ambiguities must be resolved against the state.

A violation of state law is not grounds for habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions; a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States). This Court can grant habeas relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Petitioner argues no set of facts or law that support a federal claim. Such claims are not cognizable in federal habeas. *See Estelle, supra*.

Accordingly, the Magistrate Judge recommends that these claims in Ground FIVE be dismissed as failing to present a cognizable federal claim, pursuant to 28 U.S.C. § 2254(a).

## V.   CONCLUSION

The Magistrate Judge recommends that the District Court DISMISS Petitioner's Petitions for Writ of Habeas Corpus. (CV 10-353-TUC-RCC (BPV) (Doc. 1); CV 10-543-TUC-RCC (BPV) (Doc. 1)).

Pursuant to 28 U.S.C. §636(b), any party may serve and file written objections within fourteen days after being served with a copy of this Report and Recommendation. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Fed.R.Civ.P. 72(b).

1    If objections are not timely filed, then the parties' right to *de novo* review by the

2    District Court may be deemed waived.

3    If objections are filed the parties should use the following case number: **CIV 10-**

4    **0353-TUC-RCC (lead)**.

5

6    Dated this 6th day of March, 2012.

7

8

9    _____

10   Bernardo P. Velasco
     United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28